UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHARD EUGENE GUMP,

        Petitioner,

                              CASE NO. 2:07-CV-10135

  v.                        JUDGE MARIANNE O. BATTANI

                              MAGISTRATE JUDGE PAUL J. KOMIVES

NICK J. LUDWICK,

        Respondent.[1]

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.     *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.     *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    D.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    E.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        1.     *Voluntariness of Plea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
              a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
              b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        2.     *Sentencing Issues* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
              a. Guidelines Scoring . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
              b. Apprendi . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        3.     *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
              a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
              b. Trial Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
              c. Appellate Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    F.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

---

[1]By Order entered this date, Nick J. Ludwick has been substituted in place of Jan E. Trombley as the proper respondent in this action.

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.     *Procedural History*

1.     Petitioner Richard Eugene Gump is a state prisoner, currently confined at the Mid-Michigan Correctional Facility in St. Louis, Michigan.

2.     On August 12, 2002, petitioner was convicted of one count of first degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b, pursuant to his guilty plea in the Hillsdale County Circuit Court.   On September 23, 2002, he was sentenced to a term of 81-135 months' imprisonment.

3.     Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising claims challenging the trial court's sentencing decisions under the sentencing guidelines.  The application was dismissed as premature, because petitioner also had pending in the trial court a motion to withdraw his plea and for resentencing.  *See People v. Gump*, No. 251183 (Mich. Ct. App. Oct. 24, 2003).  The trial court denied the motion to withdraw or for resentencing on November 10, 2003.  Petitioner filed no further appeal.[2]

4.     On May 18, 2005, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising claims that his sentencing guidelines range was impermissibly enhanced by facts not proven at trial, and that his trial and appellate attorneys rendered constitutionally deficient performance.  The trial court denied the motion on the same date.

---

[2]Petitioner claims that counsel filed an application for leave to appeal in the court of appeals following the denial of his motion to withdraw his plea, but that the application was rejected as untimely.

*See People v. Gump*, No. 02-26-9711 (Hillsdale County, Mich., Cir. Ct. May 18, 2005).  Petitioner

thereafter filed applications for leave to appeal in the Michigan Court of Appeals and Michigan

Supreme Court, raising the following claims:

> I.   THE TRIAL COURT ABUSED ITS DISCRETION IN THE ARRAIGNMENT AND SENTENCING STAGE OF DEFENDANT GUMPS['S] PLEA-AGREEMENT HEARING THUS DENYING DEFENDANT DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT.
>
> II.  TRIAL COUNSEL RODERICK R. DUNHAM PROVIDED DEFENDANT RICHARD E. GUMP WITH INEFFECTIVE ASSISTANCE OF COUNSEL IN THE ARRAIGNMENT AND SENTENCING FAZE [sic] OF DEFENDANT['S] PLEA AGREEMENT AND SENTENCING, THUS DENYING DEFENDANT HIS CONSTITUTIONAL SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
>
> II-B.  APPELLATE COUNSEL ARTHUR JAMES RUBINER PROVIDED GUMP WITH INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN VIOLATION OF DEFENDANT['S] CONSTITUTIONALLY PROTECTED SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for

leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing

entitlement to relief under MCR 6.508(D)."  *People v. Gump*, 477 Mich. 951, 723 N.W.2d 864

(2006); *People v. Gump*, No. 268672 (Mich. Ct. App. Aug. 16, 2006).

5.   Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on January 8, 2007.  As grounds for the writ of habeas corpus, he raises the three claims that he

raised on appeal in connection with his motion for relief from judgment.

6.   Respondent filed his answer on July 16, 2007.  He contends that petitioner's claims

are barred by petitioner's procedural default in the state courts.

7.   Petitioner filed a reply to respondent's answer on August 13, 2007.

3

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner was charged in two separate cases with first degree criminal sexual conduct (CSC-I) involving his fourteen-year-old daughter.  One case involved an act of digital penetration, while the other involved an act of penile penetration.  On the date of the arraignment on the case involving the penile penetration, the parties agreed that petitioner would plead guilty to the digital penetration charge, in exchange for dismissal of the other charge, an agreement not to prosecute petitioner for any other acts involving his daughter, and an agreement not to seek an habitual offender enhancement.  The trial court explained to petitioner that the crime of CSC-I carried a potential penalty of life imprisonment or imprisonment for any term of years, and petitioner indicated that he understood the charge against him and the potential penalties.  *See* Arraignment Tr., at 2-3, 5.  Petitioner indicated that he understood his options at the arraignment, and that he wished to plead guilty.  *See id.* at 6.  The trial court then explained to petitioner the rights he was giving up by pleading guilty, and petitioner indicated that he understood each of these rights.  *See id.* at 7-12.  The trial court again explained to petitioner the charge against him and potential penalties he faced, and petitioner indicated that he understood.  *See id.* at 13.  Petitioner denied that any one had promised him any benefit other than those provided by the plea agreement, that any one had threatened him or coerced him to plead guilty, or that anyone promised him any specific sentence.  *See id.* at 14-15.  The attorneys explained the terms of the agreement to the court, and the court in turn explained those terms to petitioner.  Petitioner indicated that he understood the agreement.  *See id.* at 15-16.

The trial court then elicited from petitioner a factual basis for the plea.  Because petitioner's statements in connection with the factual basis form a central part of petitioner's habeas claims, it is appropriate to set forth the colloquy in detail:

| | |
|---|---|
| THE COURT: | Okay.  Can you tell me what, if anything, happened, then, please. |
| DEFENDANT: | Around May I touched my daughter in ways I shouldn't have touched her.  I put my – |
| THE COURT: | What do you mean by that? |
| DEFENDANT: | I put my finger in where I shouldn't have put it, and I'm guilty. |
| THE COURT: | And where is that? |
| DEFENDANT: | In her private area.  Vagina or whatever. |
| THE COURT: | And what is that?  Is there another more – |
| DEFENDANT: | In her vagina area. |
| THE COURT: | In what?  I didn't hear. |
| DEFENDANT: | In her vaginal area. |
| THE COURT: | Vagina.  Okay.  You say May of what year, sir? |
| DEFENDANT: | This year. |
| THE COURT: | 2002? |
| DEFENDANT: | Yes. |
| THE COURT: | Okay.  And where did this take place? |
| DEFENDANT: | In Montgomery, Michigan in my |
| THE COURT: | Is this at your home? |
| DEFENDANT: | Yes. |
| THE COURT: | Okay.   And that's located right her in Hillsdale County, Michigan? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | And how long has this been going on for? |
| DEFENDANT: | Since we moved over here. |
| THE COURT: | Which is what? |
| DEFENDANT: | Last year. |
| THE COURT: | Since 2001? |
| DEFENDANT: | Yes. |
| THE COURT: | . . . .  And when did you move over here, sir? |
| DEFENDANT: | March. |
| THE COURT: | So it's been going on for about 14 months? |
| DEFENDANT: | Yes. |
| THE COURT: | Okay.  And what has been going on? |
| DEFENDANT: | Many things I shouldn't be doing. |
| THE COURT: | Well, I don't know, you have to tell me.  I don't know. |
| DEFENDANT: | With putting my hands down where I shouldn't have been putting my hands. |
| THE COURT: | Which is where? |
| DEFENDANT: | In my daughter's vagina. |
| THE COURT: | Okay.  So you have been putting your finger in her vagina? |
| DEFENDANT: | Not until this year. |
| THE COURT: | I'm sorry? |

5

| | |
|---|---|
| DEFENDANT: | Not until this year.  It just progressed way farther than it should have. |
| THE COURT: | So you touched her down there with your hands on the outside? |
| DEFENDANT: | Yes. |
| THE COURT: | That was last year? |
| DEFENDANT: | Yes. |
| THE COURT: | And how many times did you do that? |
| DEFENDANT: | Twice. |
| THE COURT: | Approximately? |
| DEFENDANT: | Twice. |
| THE COURT: | Twice.  So you touched her vaginal area twice? |
| DEFENDANT: | Yes. |
| THE COURT: | On the outside? |
| DEFENDANT: | Yes. |
| THE COURT: | Okay.  This was over her clothing or under her clothing? |
| DEFENDANT: | Over. |
| THE COURT: | Over her clothing.  Did you ever touch any other part of her? |
| DEFENDANT: | No. |
| THE COURT: | You never touched her breasts or buttocks or anything else? |
| DEFENDANT: | No. |
| THE COURT: | Okay.  And this year you start putting your finger inside of her; is that correct? |
| DEFENDANT: | Yes. |
| THE COURT: | And specifically in May of this year, 2002, you put your finger inside her vagina? |
| DEFENDANT: | Yes, just once. |
| THE COURT: | Just once.  And this is Holly – |
| DEFENDANT: | Yes. |
| THE COURT: | Gump? |
| DEFENDANT: | Yes. |
| THE COURT: | And it says here that she's fourteen.  Would that be correct? |
| DEFENDANT: | Yes. |
| THE COURT: | Do you know her birth date? |
| DEFENDANT: | May 7th of '88. |
| THE COURT: | '88.  So she just turned fourteen? |
| DEFENDANT: | Yes. |
| THE COURT: | Okay.  So you started this when you were about – when she was about thirteen? |
| DEFENDANT: | Yes. |
| THE COURT: | Okay.  And apparently there's also an allegation that you put your penis inside her? |
| DEFENDANT: | Yes. |
| THE COURT: | Okay.  Is that true?  In part you – part way in or something? |

6

| | |
|---|---|
| DEFENDANT: | No, I just rubbed it against her.  I didn't put it in. |
| THE COURT: | You just rubbed your penis against her? |
| DEFENDANT: | Yes. |
| THE COURT: | Against what? |
| DEFENDANT: | Her vagina. |
| THE COURT: | Okay.  And how many times did you do that? |
| DEFENDANT: | Twice. |
| THE COURT: | I'm sorry, twice? |
| DEFENDANT: | Twice. |
| THE COURT: | And when did that take place? |
| DEFENDANT: | After she turned fourteen. |
| THE COURT: | Okay.  So that was in May also? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Okay.  Was that the same time that you put your finger inside her? |
| DEFENDANT: | Yes. |
| THE COURT: | Okay.  Now, was this on different days or consecutive days or was it on the same day or what happened? |
| DEFENDANT: | Same day. |
| THE COURT: | Same day.  So you did all four acts on the same day, or you did it on two separate occasions? |
| DEFENDANT: | Same day. |
| THE COURT: | Okay.  So you rubbed it against – your penis against her vagina twice on the same day? |
| DEFENDANT: | Yes. |
| THE COURT: | And you put your finger insider her on two separate times on the same day? |
| DEFENDANT: | Yes. |
| THE COURT: | Okay.  And when you rubbed your penis against her did it go between her – the lips of her vagina? |
| DEFENDANT: | No. |
| THE COURT: | It – just on the sides? |
| DEFENDANT: | Yes. |
| THE COURT: | Did she over tell the police that it went inside her? |
| DEFENDANT: | I don't – |
| THE COURT: | You don't know?  You don't know what she told them? |
| DEFENDANT: | I ain't talked to her.  I don't know what she told them. |

*Id*. at 17-22.  The court then accepted petitioner's plea.

C.    *Procedural Default*

Respondent first contends that petitioner's claims are barred by petitioner's procedural

7

default in the state courts, because petitioner failed to raise these claims on direct appeal.  Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, petitioner first presented his purportedly defaulted habeas claims in his motion for relief from judgment.  Michigan Court Rule 6.508, governing motions for relief from judgment, provides that the movant "bears the burden of establishing entitlement to relief."  MICH. CT. R. 6.508(D).  The rule goes on to provide, in three separately numbered paragraphs, procedural situations in which relief will not be granted: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or postconviction motion; and (3) where the claim could have been raised in a prior appeal or postconviction motion but was not. *See* MICH. CT. R. 6.508(D)(1)-(3).  The Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing

8

entitlement to relief under MCR 6.508(D)." The Sixth Circuit has been less than clear on the extent to which this language is sufficient to constitute an invocation of the procedural bar of Rule 6.508(D)(3) to preclude federal habeas review of a petitioner's claims. *Compare, e.g., Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) and *Burroughs v. Makowski*, 282 F.3d 410 (6th Cir. 2003), *with Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004).

The Court need not resolve this issue, however, because even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits. As noted above, petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.

However, "[i]n order for a federal court to find a state court's application of [Supreme Court]

10

precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Analysis*

Petitioner's claims all stem from his one admission during the plea hearing that he digitally penetrated his daughter twice, rather than once. *See* Arraignment Tr., at 22. Although not entirely clear, it appears that petitioner is challenging the voluntariness of his plea, as well as the trial court's sentencing decisions. Petitioner also argues that both his trial and appellate attorneys rendered constitutionally deficient performance. The Court should conclude that petitioner is not entitled to habeas relief on any of these claims.

1.     *Voluntariness of Plea*

a. *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153. A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain

12

advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).

### b. Analysis

Petitioner contends that his plea was not voluntary because the trial court's colloquy "tricked" him into admitting that he had digitally penetrated the victim twice, resulting in an enhanced sentence. Petitioner's argument, however, does not bear on the voluntariness of his plea. Regardless of how many penetrations petitioner admitted to during his plea colloquy, he was convicted only of a single count based on a single penetration. Thus, petitioner's responses to the judge's questions did not result in him pleading guilty to a higher or second crime. They thus do not call into question the voluntariness of petitioner's plea with respect to the single charge to which he did plead guilty pursuant to the plea agreement, which was fully explained to petitioner and which petitioner indicated he understood. Nor does petitioner's admission to a second digital penetration render his plea involuntary because it increased his sentence under the sentencing guidelines. Petitioner's sentence was within the maximum penalty to which he was exposed by pleading guilty, a maximum which was fully explained to petitioner and which he indicated he understood. "'[F]or a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentences that could be imposed.'" *Adams v. Burt*, 471 F. Supp. 2d 835, 841 (E.D. Mich. 2007) (Lawson, J.) (quoting *King*, 17 F.3d at 154). Petitioner was informed of the maximum sentence, and was sentenced within that maximum. Further, it is clear from the transcript of the plea hearing that there was no agreement whatsoever regarding the scoring of the guidelines or the sentence to be imposed. Thus, any facts admitted at the plea hearing bearing on the sentence could not have rendered his plea involuntary, because he had no expectations regarding

13

his sentence other than the maximum explained to him by the trial court. That petitioner did not know the exact sentence he would receive or how his guidelines would be scored does not render his plea involuntary, because he was informed of the maximum sentence he faced. *See United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990), *quoted with approval by United States v. Awad*, No. 91-1856, 1992 WL 354084, at *1 (6th Cir. Nov. 30, 1992) (per curiam).

In short, petitioner was fully advised of the charges against him, the rights he was giving up by pleading guilty, the parties' plea agreement, and the maximum penalty he faced by pleading guilty. Petitioner indicated that he understood all of these things, that it was his decision to plead guilty, and that no one pressured him into doing so. These statements by petitioner, made while under oath and in open court, carry a strong presumption of truthfulness. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Where, as here, "the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (internal quotation omitted). The fact that petitioner may have admitted facts during the plea colloquy which impacted his sentence does not render his plea involuntary, where there was no sentencing agreement which was violated and petitioner was sentenced within the maximum sentence explained to him by the court. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this basis.

    2.    *Sentencing Issues*

Petitioner next raises a number of challenges to his sentence, scattered throughout his briefs.

14

The Court should conclude that each of these sentencing claims is without merit.

### a.  Guidelines Scoring

Petitioner raises a number of challenges to the scoring of the Michigan sentencing guidelines and the trial court's resulting sentence.  Specifically, petitioner contends that the guidelines were improperly scored because the court relied on a ten-year-old prior conviction, that he was entitled to a reduction for acceptance of responsibility, and that the trial court impermissibly departed from the guidelines.  None of these claims are cognizable on habeas review.

A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987).  Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).

### b.  Apprendi

Petitioner next suggests that his sentence violates the rule of *Blakely v. Washington*, 542 U.S. 296 (2004).  In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[o]ther than the

fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id.* at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*.

16

A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id.* at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Petitioner contends that, because the trial court made the necessary findings on the sentencing guidelines, his sentence violates *Blakely*. The Court should conclude that petitioner is not entitled to habeas relief on this claim. Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty

17

which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction, therefore, contained all of the factual findings necessary to impose the statutory maximum on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely* even though the trial court made additional factual findings in imposing the minimum term of petitioner's imprisonment. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court

18

explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in

*Blakely*.  Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels.  First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power.  It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury.  Indeterminate sentencing does not do so.  It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty.   Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion.  But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment.  *See Bellamy v. Curtin*, No. 1:06-CV-599, 2007 WL 527988, at *4 (W.D. Mich. Feb. 14, 2007); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Toothman v. Davis*, No. 05-CV-74561, 2006 WL 2190515, at *2 (E.D. Mich. Aug. 1, 2006) (Edmunds, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Ineffective Assistance of Counsel*

Finally, petitioner contends that his trial counsel was ineffective at the plea and sentencing hearings for not correcting the record when petitioner admitted to two digital penetrations, and that

his appellate counsel was ineffective for failing to raise his claims relating to this admission on appeal.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

### a.  Clearly Established Law

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *See id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See id*.  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the

errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.  Where, as

here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy

the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that,

but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828.  However, with respect

to the prejudice prong it is not enough for petitioner to merely allege that he would have insisted on

going to trial had counsel properly advised him.  As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable
> probability that, but for counsel's errors, he would not have pleaded guilty and would
> have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366,
> 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a
> prediction of what the outcome of a trial might have been. *Id*. at 58-60, 106 S.Ct.
> 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the
> petitioner must show that, but for counsel's errors, he would not have pleaded guilty,
> because there would have been at least a reasonable chance he would have been
> acquitted. If examination of the totality of the circumstances shows that the petitioner
> would in all likelihood have been convicted of the same, or greater, charges after a
> trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's
> conclusory allegation that, but for an alleged attorney act or omission, he would not
> have pleaded guilty is not enough to prove such a claim. Petitioner must show that
> there is a reasonable probability that the result of the proceeding would have been
> different. It is not sufficient to show that, but for counsel's alleged errors he would
> have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v.*

*Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*,

174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the

circumstances shows that the petitioner would in all likelihood have been convicted of the same, or

greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

### b.  Trial Counsel

Petitioner contends that trial counsel was ineffective for allowing him to admit during the

plea colloquy that he had twice digitally penetrated the victim and for not correcting this admission once it was made. Petitioner contends that this admission resulted in him being subjected to a more severe sentence than he otherwise would have received. The Court should conclude that petitioner is not entitled to habeas relief on this claim, because he cannot show that the court's sentence would have been any different had he admitted to only one digital penetration.

At the outset, petitioner's claim that counsel allowed him to plead guilty to another crime is without merit. As explained in connection with petitioner's involuntary plea claim, regardless of the admissions petitioner made in the course of the plea colloquy, petitioner pleaded guilty to a single crime, consistent with the agreement between him and the prosecutor. Nor can petitioner show that his sentence would have been any less severe had counsel objected and set the record straight on this matter.

Petitioner's sentencing guidelines were computed as follows. Petitioner was convicted of a Class A felony, *see* MICH. COMP. LAWS § 777.16y, subjecting him to the sentencing grid found in MICH. COMP. LAWS § 777.62. The sentencing information report (SIR) computed a prior record variable (PRV) score of 5, placing petitioner at PRV Level B.[3] With respect to the offense variables, the SIR assigns the following scores: OV10 (exploitation of vulnerable victim)–10 points; OV11 (sexual penetrations)–25 points; and OV13 (contemporaneous criminal acts against same victim)–25 points.[4] This resulted in a total OV score of 60, and a Level IV. The sentencing grid therefore mandated a sentencing range, for the minimum term, of 81-135 months imprisonment. Petitioner contends that, without his admission of a second digital penetration, OV11 would have been scored

---

[3]A copy of the SIR is appended to petitioner's brief in the Michigan Court of Appeals on appeal from the trial court's denial of his motion for relief from judgment.

[4]All other offense variables were scored at zero points.

22

as zero points, dropping his Offense Level to Level III and resulting in a sentencing range of 51-85 months imprisonment.  However, even without petitioner's admission of second digital penetration, OV11 could have been properly scored at 25 points.

Under OV11, the trial court scores 25 points if one criminal sexual penetration occurred, *see* MICH. COMP. LAWS § 777.40(1)(b), not including the sexual penetration forming the basis of the CSC-I conviction, *see* MICH. COMP. LAWS § 777.40(2)(c).  Here, even apart from petitioner's admission that he committed a second digital penetration of the victim, petitioner was charged with committing a penile penetration as well, a charge which was dismissed in exchange for his guilty plea.  The trial court was free to consider this conduct in imposing sentence, regardless of petitioner's admissions at the plea colloquy.  As the Supreme Court has explained, traditionally "[s]entencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior." *Nichols v. United States*, 511 U.S. 738, 747 (1994).  Thus, the fact that the charges may have been dismissed pursuant to a plea agreement "is not significant considering that the judge could properly consider the criminality of the underlying actions regardless of the final disposition of the cases." *Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995).  Nor can petitioner show that the trial judge would have selected a lesser sentence within the guideline range had he not admitted to a second digital penetration, in light of the trial judge's focus on the entire pattern of abuse petitioner committed against his daughter and the trial judge's assertion that, but for the guidelines, he would have sentenced petitioner to significantly more time in prison. *See* Sentence Tr., at 9-10.  Thus, petitioner cannot show a reasonable probability that, had counsel prevented him from admitting to a second digital penetration, his sentence would have been any different,

23

and petitioner therefore is not entitled to habeas relief on this claim.

### c. Appellate Counsel

Petitioner also contends that appellate counsel was ineffective for failing to raise these issues on appeal.    With respect to appellate counsel, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  As noted above, each of petitioner's claims is without merit, and thus counsel was not ineffective for failing to raise them on appeal.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit*

*Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 3/23/09

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on March 23, 2009.

s/Eddrey Butts

Case Manager

---

25